# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:20-CV-00172-GCM

| | |
|---|---|
| **ELIZABETH LEE HARMAN,** | |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **KILOLO KIJAKAZI,** | |
| **Defendant.** | |

**THIS MATTER** comes before the Court on cross-motions for summary judgment by the Plaintiff (ECF No. 13) and Defendant (ECF No. 17), along with the parties' briefs and exhibits. The matter is ripe for disposition. The Court has considered the parties' arguments, the administrative record, and the applicable authorities. For the reasons described below, the Court will DENY Plaintiff's Motion for Summary Judgment, GRANT Defendant's Motion for Summary Judgment, and AFFIRM the decision of the Commissioner.

## I.  BACKGROUND

Elizabeth Harman is a 48-year-old woman. After unsuccessfully applying for Social Security benefits on two occasions, Harman applied for disability insurance under Title II of the Social Security Act. Harman filed her application on May 18, 2017, claiming an effective disability date of December 21, 2015. In that application, Harman claimed disability based on central sensitization syndrome, severe major depressive disorder, post-traumatic stress disorder (PTSD), fibromyalgia, attention deficit hyperactivity disorder (ADHD), obsessive compulsive disorder—hoarding specific (OCD), chronic fatigue syndrome, and irritable bowel syndrome with chronic constipation.

Harman's Title II application was denied, and so was her motion for reconsideration. She requested a hearing before an administrative law judge (ALJ). The ALJ held a hearing on June 17, 2019. In October of 2019, the ALJ issued a partially favorable decision. Instead of an effective date of December 21, 2015, however, the ALJ concluded that Harman was disabled as of January 10, 2018. Harman appealed. The Appeals Council denied review on August 21, 2020. Harman then sought judicial review in this Court, pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

A District Court reviewing a final decision of the Commissioner of Social Security may consider only two things: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Although this threshold is not high, it requires "more than a mere scintilla of evidence." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021). In reviewing for substantial evidence, a District Court may not "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).

## III. DISCUSSION

The Social Security Administration employs a five-step process to determine whether a claimant is disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4) (2021). First, the Commissioner determines whether the claimant is engaged in substantial gainful activity, i.e., whether they are working. Next, the Commissioner considers whether the claimant has a severe impairment, or impairments that are severe in combination. Then the Commissioner considers "the

Listings," a category of impairments that are so severe that the claimant is automatically deemed to be disabled. Fourth, the Commissioner determines the claimant's "Residual Functional Capacity" (RFC), defined as what a claimant "can still do despite his limitations." *Id.* § 404.1545(a). Finally, the Commissioner considers whether the claimant can perform other jobs in the local or national economy. The plaintiff carries the burden at the first four steps; the government carries the burden at the last. *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

During the five-step process for Harman's application, the ALJ concluded that Harman had severe impairments, including depression, bipolar disorder, obsessive compulsive disorder, and PTSD.[1] A.R. 19.[2] At Step Four, the ALJ assigned two different RFCs. *See* A.R. 21–25. One RFC was for the period prior to January 10, 2018. The other was for January 10, 2018 and after. At Step Five, there were suitable jobs in the national economy for the former RFC, but not the latter.[3] A.R. 26–27. That meant that Harman was only entitled to disability insurance for the period after January 10, 2018. *See id*. at 27.

The ALJ's decision to assign two different RFCs hinged in large part on her assessment of Harman's psychological conditions. The ALJ concluded that prior to January 10, 2018, Harman's "statements concerning the intensity, persistence, and limited effects" of mental health symptoms were "not fully supported." A.R. 22. But after January 10, 2018—when Harman was admitted to inpatient care and treated with electroconvulsive therapy—the ALJ deemed Harman's statements about her symptoms "fully supported." *Id*.

---

[1] The ALJ also concluded that Harman had fibromyalgia, central sensitivity syndrome, obesity, and chronic fatigue syndrome. A.R. 19.

[2] Citations to A.R. refer to the administrative record.

[3] The difference between the two RFCs was that the latter RFC (for which no jobs existed) limited work to one hour at a time, followed by a ten-minute break. The latter RFC also involved missing two days of work per month. Either one of these conditions would independently have precluded suitable work at Step Five. *See* A.R. 24, 27.

3

Harman argues that the ALJ failed to "build an accurate and logical bridge" from the evidence to her conclusion that Harman became disabled on January 10, 2018. *See Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Harman also argues that the ALJ was required to employ a medical advisor to determine the date of onset under the Fourth Circuit's decision in *Bailey v. Chater*, 68 F.3d 75 (4th Cir. 1995). The Court will consider the latter argument first.

**A. ALJ's Non-Consultation of a Medical Advisor**

Harman claims that *Bailey v. Chater* requires the ALJ to "procure the assistance of a medical advisor" when evidence about the onset of a non-traumatic disability is ambiguous. *Bailey*, 68 F.3d at 79. As Harman recognizes, that decision was based on the Fourth Circuit's interpretation of Social Security Ruling (SSR) 83-20, which was rescinded in 2018 by the Social Security Administration. *See id*. at 79–80 (analyzing SSR 83-20); Soc. Sec. Admin., Policy Interpretation Ruling: Determining the Established Onset Date (EOD) in Disability Claims, Social Security Ruling (SSR) 18-1, 2018 SSR LEXIS 2, at *1 (noting rescission of SSR 83-20) (hereinafter SSR 18-1). Harman argues, however, that *Bailey* survives the rescission of SSR 83-20 because the reasoning from *Bailey* applies equally to the new ruling, SSR 18-1. *See* ECF No. 13-1 at 17.

The Court agrees with the Commissioner that *Bailey* does not apply. In *Bailey*, the Fourth Circuit relied on language from SSR 83-20 that read: "[T]he administrative law judge should call on the services of a medical advisor when onset must be inferred." *Bailey*, 68 F.3d at 79. SSR 18-1 has no such language. Instead, it says: "The decision to call on the services of an ME is always at the ALJ's discretion." SSR 18-1, 2018 SSR LEXIS 2, at *16–17. The summary accompanying the notice of the ruling is similarly unequivocal: "[T]his SSR clarifies that an administrative law judge may, but is not required to, call upon the services of a medical expert, to assist with inferring the date that the claimant first met the statutory definition of disability." *See id.* at *2. As a result,

4

the Court concludes that the ALJ's choice not to obtain a medical expert did not, by itself, deprive her findings of substantial evidence.

### B. ALJ's Assignment of the Disabled Date

Harman also argues that the ALJ failed to "build an accurate and logical bridge" from the evidence to her conclusion that a "disabled RFC" began on January 10, 2018. The Court disagrees.

Harman proffers a number of reasons why the ALJ ought to have reached a different conclusion. She argues (1) that the ALJ misapprehended the clinical indications for, and significance of, electroconvulsive therapy; (2) that it was illogical to credit evidence from a consulting psychologist after hospitalization, but not before; and (3) that the ALJ failed to consider Harman's erratic arrival times at appointments, her fluctuating weight, her sleep habits, and her consistent medical histories. *See* ECF No. 13-1 at 9–15, 18–25. At bottom, these arguments revolve around the weight that the ALJ assigned to the various parts of the evidence.

The Fourth Circuit has long emphasized that a reviewing court must not weigh the evidence again, nor substitute its judgment for that of the Commissioner. So long as the ALJ's decision was supported by substantial evidence, and based on the correct legal standards, this Court must affirm. *Barnhart*, 434 F.3d at 653. This is true even if the reviewing court would have come to a different conclusion in the first instance. *See Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). Here, the ALJ reasonably found that hospitalization served as objective evidence of limitations on her ability to work after January 10, 2018. Because substantial evidence supported the ALJ's decision, the Court must affirm.

### IV. ORDER

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**. Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**, and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED.**

Signed: November 2, 2021

Graham C. Mullen
United States District Judge